PER CURIAM.
The question before us is what standard or standards a court should apply in order to seal properly a defendant’s “court records” or other criminal history records and the applicability of section 943.058, Florida Statutes (1991)[1] in that process.
In this appeal, the trial court ordered both appellee’s court records and her other criminal history records sealed solely in reliance on the statute. The state argues that this was improper because the trial *283 court could not seal the court records without making certain findings based on constitutional principles. We find the state’s argument correct. We, therefore, reverse the order insofar as it orders the court records sealed absent the proper constitutional findings. We otherwise affirm insofar as the order required the sealing of criminal history records other than “court records.”
Section 943.058 distinguishes between two types of records that may be sealed: (1) Court or “judicial records”; and (2) “other criminal history records.”[2] For historical and constitutional reasons, in considering a request to seal, the trial court must apply a different standard to each of the two types of record under consideration. We will consider the standard for sealing court records first.
Court records may not be sealed under section 943.058. The statute specifically excludes the sealing of court records from its application, leaving that to the discretion of the courts: “The courts of this state shall continue to have jurisdiction over their own procedures, including the keeping, sealing, expunction, or correction of judicial records containing criminal history information. The courts may order the sealing or expunction of any other criminal history record, provided ... [specific statutory requirements for sealing other criminal history records set forth].” § 943.058(2), Fla.Stat. (1991) (emphasis added).
Because the statute does not provide the means or standards to seal court records, they must be sealed in accord with a different standard. That different standard is a constitutional one. In excluding court records from the operation of the statute, the legislature tacitly acknowledged that court records traditionally have been protected by the First Amendment and are properly matters within the exclusive jurisdiction of the courts themselves. That First Amendment protection requires courts, before sealing such records, to make certain constitutional findings based on the three-part compelling interest/least restrictive means test enunciated in Press-Enterprise Co. v. Superior Court of California, Riverside County, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).[3] Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 502 (1st Cir.1989).
In the instant case, the court sealed appellee’s court records without making any constitutional findings, basing the sealing solely on the requirements of section 943.058. This was error. Because court records are excluded specifically from the statute and cannot be sealed without the necessary constitutional findings, we must reverse the court’s order sealing appellee’s court records.
We turn next to the standard for sealing other criminal history records. Traditionally courts have found there to be a constitutional (as opposed to a public record law) right of access to those proceedings or records that are: (1) “ ‘presumptively open,’ ” and (2) as to which “ ‘public access plays a significant positive role in the functioning of the particular process in question.’ ” Pokaski, 868 F.2d at 502 (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569, 100 S.Ct. 2814, 2823, 65 L.Ed.2d 973, 984 (1980) and Press-Enter *284 prise, 478 U.S. at 8, 106 S.Ct. at 2740, 92 L.Ed.2d at 10).
In finding court records protected, the Pokaski court observed that access to court records, even future access to records of court proceedings long since terminated, implicates the First Amendment because court records historically were presumptively open and access to trials and other court proceedings promoted “ ‘public acceptance of both the process and its results,’ ‘awareness that society’s responses to criminal conduct are underway,’ [and] the ‘prophylactic aspects of ... community catharsis.’ ” Pokaski, 868 F.2d at 503 (citing Richmond Newspapers, 448 U.S. at 571, 100 S.Ct. at 2824, 65 L.Ed.2d at 985). Additionally, open trials “contribute[d] ‘assurance that the proceedings were conducted fairly ..., discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality.’ ” Pokaski, 868 F.2d at 503. Therefore, the Pokaski court concluded, the right of access to court proceedings and court records is critical to the proper functioning of the court system and cannot be circumscribed.
To summarize, public access to court records is afforded First Amendment protection because such access is steeped in historical tradition and because it implicates the First Amendment right of the press to acquire and disseminate public information in the interest of preserving our free society. Access to court records is critical to the proper operation of the courts as arbiters of disputes and dispensers of justice. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).
When other criminal history records are considered in this context, it quickly becomes apparent that the ability of the public to have access to other criminal history records simply does not rise to the level of or implicate the concerns expressed in Pokaski. First, these types of records traditionally have not been “presumptively open.” Although they have been made accessible to the public by the enactment of public record laws similar to chapter 119, Florida Statutes (1991), we have no historical background of allowing access to administrative or agency records concerning citizens’ criminal history absent the enactment of such public record laws. In fact, some would, and have, argued that allowing public access to such records would violate their right of privacy. Finally, public access to these records would not necessarily have a significant impact on the process itself. Public access to citizens’ criminal history records held by law enforcement agencies would serve no beneficial purpose in ensuring the continued well-being of our free society or in protecting and ensuring the proper operation of those governmental agencies.
For these reasons, we must conclude that the First Amendment does not guarantee access to “other criminal history records.” Since, unlike court records, other criminal history records do not come clothed with constitutional protection, they may be sealed without constitutional findings. Rather, they may be sealed solely by resort to the requirements of section 943.058.
The court here did exactly that. It sealed appellee’s other criminal history records solely by resort to section 943.058. No other findings were made or required. We, accordingly, must affirm that part of the order sealing appellee’s other criminal history records.
In Russell v. Miami Herald Publishing Co., 570 So.2d 979 (Fla. 2d DCA1990), we addressed the issue of what standards to apply in these types of cases. After further consideration, we now conclude that some of the language in that previous decision may lead to some confusion, and we seek now to correct any such misperception. Although, in Russell, we required the three-part compelling interest/least restrictive means test to be applied to requests to seal court records, we used language that may appear to require that test to be applied to requests to seal other criminal history records as well. We stated: “[I]n order for section 943.058 to be constitutional, the court must apply the three-pronged test which the United States Supreme Court enunciated in Press-Enterprise Company v. Superior Court of Cali *285 fornia, County of Riverside, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) when considering a request for closure of court records.” Russell, 570 So.2d at 982.
In Russell, while we found as we have again here that the standards for sealing records established in section 943.058 do not apply to the sealing of “court records,” by stating that “in order for section 943.-058 to be constitutional, the court must apply the three-pronged test,” we seemingly implied that courts must consider the three-part test before ruling on a request to seal other criminal history information. As we now here more clearly have announced, that is not the case. We, therefore, adopt the following as the proper standard to be followed in sealing each of the two types of record: “Other criminal history records” may be sealed or expunged solely by following the requirements of section 943.058. The closure or expunction of those records, held by law enforcement or other governmental agencies, is not subject to any constitutional grounds of scrutiny. “Court records,” on the other hand, are not subject to the standards set forth by statute, but are subject to the constitutional scrutiny established in Press-Enterprise. That test allows closure if “(1) closure serves a compelling interest; (2) there is a ‘substantial probability’ that, in the absence of closure, that compelling interest would be harmed; and (3) there are not alternatives to closure that would adequately protect that compelling interest.” Russell, 570 So.2d at 982-83 (citing Press-Enterprise, 478 U.S. at 13, 106 S.Ct. at 2743).
We would make some final observations in regard to the sealing of “court records.” We are aware that the Florida Supreme Court promulgated its own “court records” test in Bundy v. State, 455 So.2d 330 (Fla.1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); however, we believe that the Bundy test is merely another way of stating the compelling interest/least restrictive means test as discussed in Pokaski. The Pokaski court observed that although Press-Enterprise substituted “higher values” for “compelling interest,” the Supreme Court did not intend to make the burden any less rigorous. We believe Bundy’s “necessary to prevent a serious and imminent threat to the administration of justice” language is merely another version of “compelling interest.”
We also are aware that the adoption of the standard announced here pertaining to the sealing of court records may result in far-reaching changes in the disposition of cases in which defendants seek to seal such records since, according to the state, criminal court records currently are sealed routinely without resort to constitutional standards. That will not be the case under the standard we have enunciated.
Additionally, while we recognize that sealing a “court record” is different from closing a “court proceeding” insofar as the latter carries with it prior restraint considerations, the cases we have reviewed do not distinguish between them as to the test to be applied. Pokaski applies the same concerns to sealing of records as it does to closure of proceedings, noting that the same interests are to be protected.
Reversed in part; affirmed in part.
LEHAN, C.J., and RYDER, DANAHY, CAMPBELL, THREADGILL and PARKER, JJ., concur.
BLUE, J., concurs in result only with opinion.
ALTENBERND, J., concurs and dissents with opinion with which SCHOONOVER, FRANK and HALL, JJ., concur.
PATTERSON, J., specially concurs with ALTENBERND, J., with opinion.
LEHAN, C.J., and BLUE, J., join in the certified question in the dissent.

. Although section 943.058 has been repealed and replaced (chapter 92-73, Laws of Fla.), the new provisions do not address the problem considered here. Neither do they change our analysis, except, perhaps, to strengthen it.

. Although the 1991 statute offers no definition, we believe that “other criminal history records” may be loosely defined as an individual’s criminal history information that is held by a state attorney, police department, sheriff, or the Florida Department of Law Enforcement or other similar criminal justice agency. The 1992 statute defines "criminal history record” as “any nonjudicial record maintained by a criminal justice agency containing criminal history information." § 943.045(18), FIa.Stat. (Supp.1992). We note parenthetically that although the statute defines "criminal history information” as information collected by criminal justice agencies, including courts, see § 943.045(3), Fla.Stat. (Supp.1992), we believe that the constitutional analysis we apply here precludes a literal application of that definition.

. The Press-Enterprise test provides that closure may be ordered if "(1) closure serves a compelling interest; (2) there is a ‘substantial probability’ that, in the absence of closure, that compelling interest would be harmed; and (3) there are not alternatives to closure that would adequately protect that compelling interest.” Russell v. Miami Herald Publishing Co., 570 So.2d 979, 982-83 (Fla. 2d DCA1990) (citing Press-Enterprise, 478 U.S. at 14-15, 106 S.Ct. at 2743).